## MURRAY v. CARLETON.

District Court, D. Maine, S. D.    July 17, 1929.

No. 1101.

PETERS, District Judge. This matter originated by a petition to the Industrial Accident Commission of Maine to recover compensation for the death of the plaintiff's intestate, who was an engineer on a motorboat owned by the defendant Carleton. The proceedings were brought into this court through a petition for limitation of liability and a subsequent libel upon which the matter was heard by me, and in which it is claimed that the defendant was personally responsible for the death of the plaintiff's intestate and liable for damages, by reason of the defective condition of his motorboat above referred to, in that carbon monoxide gas was negligently permitted to escape into the engineroom where the plaintiff's intestate worked.

The defendant claims to be entitled to limit his liability to the value of the motorboat, and also interposes, as a bar to the plaintiff's claim, the assumption of the risk by the plaintiff's intestate and a denial of the claim that the death was caused by carbon monoxide poisoning. I will first consider the last defense.

■ It is perfectly clear and well settled, as illustrated in the cases cited by the defendant in his brief, and many others, that the obligation here rests upon the plaintiff to show that the death was caused by gas poisoning, and not that it might have been so caused, or that the facts are as consistent with gas poisoning as with some other possible cause of death. Honaker v. Whitley (1919) 124 Va. 194, 97 S. E. 808; Taylor's Case, 126 Me. 450, 139 A. 478.

■ The plaintiff must show causal connection between the employment and the accident which caused the death. Failure to show such connection, or to prove facts from which a reasonable deduction in that behalf might be drawn, is fatal.

■ It will not be profitable to summarize all the evidence in this case, which I have reviewed with some care. It is sufficient to say that it appears that in the motorboat there was a three-quarter inch pipe a few inches long leading from the exhaust manifold, which could, and doubtless did, discharge noxious gasses into the engineroom, because the valve in this small pipe which could have closed it was usually left open. The fact that the gasses to some extent escaped into the engineroom and might be dangerous was called to the attention of the plaintiff's intestate, Murray, the engineer of the boat, more than once before the accident occurred, and at one time Murray had attached a hose pipe to this three-quarter inch pipe and let the gasses out through the companionway to the outer air. But, on finding that this hose was in his way, he had removed it. Undoubtedly gasses escaped through this small pipe into the engineroom, but Murray did not regard that fact as dangerous enough to take any action about it. Murray had worked some little time as engineer before he died. On the day of his death, he was taken sick rather suddenly, was found lying on the floor of the cabin, had vomited, shortly became unconscious, and died. A doctor called at the time filed a certificate giving the cause of death as "probably chronic myocarditis; contributory cause, bad attack of indigestion, which was probably angina pectoris." Murray had previously consulted another doctor and complained of indigestion, and had previously fallen down unconscious. This doctor says that these symptons might be consistent with carbon monoxide poisoning, although at the time he did not have that in mind. The man died suddenly, either from carbon monoxide poisoning or from some sudden internal disturbance which had previously manifested itself in various symptoms which he had complained of, such as nausea, sour stomach, etc.

If this was the whole case, it might be said by the layman that probably the escaping gas caused Murray's death. But as a medical question it is settled by the testimony of the doctors, including a pathologist of learning and experience, who testifies without contradiction, that, in all cases of carbon monoxide poisoning, the body, after death, and continuing for a long time, presents a noticeably pink color, sometimes described as "cherry red." This is due to the fact that the carbon monoxide combines with the hemoglobin of the blood and replaces the oxygen, causing an asphyxiation of the tissues. The mucous membrane, as in the lips, is exaggerated in coloring after death, and this unusually reddish condition of the body is due to the fact that the blood is stained by reason of the chemical change referred to. The doctors called by the plaintiff testify that this body presented a pallid appearance from the hips to the top of the head; and the pathologist testified, without contradiction, that it would not be possible for the body to show such an appearance if the man died of carbon monoxide poisoning.

This leaves no doubt in my mind that the death was not due to such poisoning.

The defendant also presents a very strong case to support his claim of assumption of risk. But I do not find it necessary to discuss that, in view of the fact that the evidence would not permit a finding that Murray died of carbon monoxide poisoning, as claimed by the plaintiff.

Judgment will be rendered for the defendant, without costs.